IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY LUCERO, CHASE AESCHILMANN, JAMES RIVAS, TROY RIVERA, JUAN SAUCEDO, BRIAN BUTLER & OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>WEBER COUNTY UTAH, OGDEN CITY, OGDEN CITY POLICE DEPARTMENT, DEE SMITH in his official capacity, OFFICER ANTHONY POWERS, & JOHN DOES 1-30,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br><br>Case No. 1:14-CV-68 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Dismiss filed by Ogden City, the Ogden City Police Department, and Officer Anthony Powers (collectively, the "Ogden City Defendants") and a Motion to Dismiss filed by Weber County and Dee Smith (collectively, the "Weber County Defendants"). For the reasons discussed below, the Court will grant Defendants' Motions.

I. BACKGROUND

Weber County obtained a civil nuisance injunction against the Ogden Trece gang and its members pursuant Utah Code Ann. § 76-10-806. The injunction, among other things, prohibits Trece members who have been served with a copy of it from associating with one another; confronting, intimidating, annoying, harassing, threatening, challenging, provoking, or assaulting any person known to be a witness or victim of any activity of Trece; possessing a firearm in

1

public or any place accessible to the public; or violating an 11 p.m. to 5 a.m. curfew. The injunction applies to a twenty-five square-mile "Safety Zone" encompassing nearly the entire city of Ogden.

Plaintiffs are individuals who claim that they are not Ogden Trece members, but have either been served with or otherwise affected by the injunction. Plaintiffs assert claims under both the United States and Utah constitutions, as well as various state-law claims.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[1] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[6]

## III. DISCUSSION

A.     OGDEN CITY POLICE DEPARTMENT

Defendants argue that the Ogden City Police Department is not an entity amenable to suit under 42 U.S.C. § 1983 and should be dismissed.

"Sheriff's departments and police departments are not usually considered legal entities subject to suit."[7] In *Martinez v. Winder*, the Tenth Circuit found that the City of Denver Police Department was not a separate suable entity.[8] In addition, this Court has repeatedly held that police departments are not separate legal entities amendable to suit.[9]

Capacity to be sued is determined based upon state law.[10] Thus, if the Ogden City Police Department has the capacity to sue or be sued under Utah law, it is a legal entity subject to suit

---

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6] *Iqbal*, 556 U.S. at 679 (internal quotation marks and citations omitted).

[7] *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).

[8] 771 F.2d 424, 444 (10th Cir. 1985).

[9] *See Fail v. W. Valley City*, No. 2:04-CV-1094 PGC, 2006 WL 842910, at *2 (D. Utah Mar. 28, 2006).

[10] *Dean*, 951 F.2d at 1214.

and a "person" for purposes of § 1983.[11] Plaintiffs have provided nothing that would suggest that the Ogden City Police Department has the capacity to sue or be sued under Utah law. There are provisions of Utah law making clear that counties and other municipalities can sue and be sued.[12] However, Plaintiffs have failed to point to anything that would support the notion that the police department may sue or be sued under Utah law.

Plaintiffs refer to the Governmental Immunity Act of Utah, which defines "political subdivision" as "any county, city, town, school district, community development and renewal agency, special improvement or taxing district, local district, special service district, an entity created by an interlocal agreement adopted under Title 11, Chapter 13, Interlocal Cooperation Act, or other governmental subdivision or public corporation."[13] Plaintiffs argue that since police departments are not listed in the definition of "political subdivision" they are amenable to suit. However, whether a police department is a "political subdivision" of the state under the Governmental Immunity Act of Utah is not the relevant inquiry. As stated, the Court must consider whether Utah law permits police departments to sue or be sued.

Plaintiffs point to out-of-circuit decisions that have held that police departments are suable entities for purposes of § 1983.[14] However, in each of those cases the court was applying California law. As stated, the Court must apply Utah law and Plaintiffs have pointed to nothing

---

[11] *Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 678 (D. Wis. 1999).

[12] Utah Code Ann. § 10-1-202 (stating that municipalities may sue and be sued); *id.* § 17-50-302(2)(a)(i) (stating that counties may sue and be sued).

[13] *Id.* § 63G-7-102(7).

[14] *Streit v. Cnty. of L.A.*, 236 F.3d 552, 565 (9th Cir. 2001); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988); *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986).

4

in Utah law that would indicate that police departments are amenable to suit. Therefore, the Court will dismiss Plaintiffs' claims against the Ogden City Police Department.

B. OGDEN CITY AND WEBER COUNTY

Plaintiffs assert claims against both Ogden City and Weber County. "To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights."[15]

Plaintiffs must show the existence of an official policy or custom "to distinguish acts of the *municipality* from acts of *employees* of the municipality."[16] Municipal policies or customs include the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification of such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[17]

Plaintiffs argue that they "had their freedom of association rights trampled, their freedom of religion trampled, the right to possess firearms was trampled, their right to consume alcohol if they were of legal drinking age with no restrictions was trampled, [and] they were subjected to

---

[15] *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009).

[16] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

[17] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (internal quotation marks and alteration omitted).

5

an unconstitutional curfew."[18]  While Plaintiffs have alleged that they suffered a deprivation of their constitutional rights, they have failed to sufficiently allege that the municipal Defendants executed a policy or custom that caused the deprivation.  Without more, Plaintiffs' claims against Ogden City and Weber County fail.  Therefore, the Court will dismiss Plaintiffs' claims against Ogden City and Weber County without prejudice.

C.     OFFICER ANTHONY POWERS

Plaintiffs alleged that Officer Anthony powers is an employee "of the Ogden Police Department who played a key and integrated role in bringing the initial action against the now Plaintiffs."[19]  Though far from clear, it appears that Plaintiffs are asserting claims against Defendant Powers based on testimony he provided at the hearings that ultimately resulted in the issuance of the injunction.[20]  Defendants argue that Defendant Powers is immune from suit.

Because of the dearth of allegations against Defendant Powers, it is difficult to address the claims against him.  If Defendant Powers merely testified at the hearings, then he would be entitled to absolute immunity.[21]  If, however, Defendant Powers was a complaining witness, he would not be entitled to absolute immunity, only qualified immunity.[22]  A complaining witness is one who "set[s] the wheels of government in motion by instigating a legal action."[23]

---

[18] Docket No. 26, at 6–7; Docket No. 29, at 5.

[19] Docket No. 3 ¶ 15.

[20] *See* Docket No. 3 Ex. B; Docket No. 19 Ex. 4 ("During the multiple hearings, Officer Powers testified in the hearings, making numerous allegations about alleged gang activity.").

[21] *Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983).

[22] *Malley v. Briggs*, 475 U.S. 335, 340 (1986).

[23] *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992).

A complaining witness may be entitled to qualified immunity.[24] Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[25] Once the qualified immunity defense is asserted, the plaintiff "bears a heavy two-part burden" to show, first, "the defendant's actions violated a constitutional or statutory right," and, second, that the right was "clearly established at the time of the conduct at issue."[26] In this case, Plaintiffs have failed to sufficiently allege that Defendant Powers violated a clearly established constitutional or statutory right when he testified during the state court proceedings. Therefore, he is entitled to qualified immunity as to these claims.

D. DEE SMITH

Defendant Dee Smith is the Weber County Attorney. Plaintiffs allege that "Defendant Smith inserted himself into the actions of serving the Injunction."[27] Plaintiffs bring claims against Defendant Smith in his official capacity.

Plaintiffs' claims for monetary damages against Defendant Smith in his official capacity are barred. "Neither states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983."[28] However, state officers sued in their individual capacities "are

---

[24] *Malley*, 475 U.S. at 340–43.

[25] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[26] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (internal quotation marks omitted).

[27] Docket No. 3 ¶ 21.

[28] *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)).

'persons' subject to suit under section 1983."²⁹  Therefore, while Plaintiffs appear to assert only claims for money damages against Defendant Smith in his official capacity, the Court will consider Plaintiffs claims against Defendant Smith as if they were brought against him in his individual capacity.

Defendants argue that Defendant Smith is either entitled to absolute prosecutorial immunity, quasi-judicial immunity, or qualified immunity.

Plaintiffs' claims against Defendant Smith are unclear.  To the extent that Plaintiffs are bringing claims against Defendant Smith based on his participation in the proceedings that resulted in the issuance of the injunction, Defendant Smith would be entitled to absolute prosecutorial immunity.  The Tenth Circuit has held that "a prosecutor's activities related to initiating and pursuing a criminal prosecution and presenting the state's case at trial are absolutely immune from liability."³⁰  "A prosecutor's participation in a probable cause hearing and his presentation of evidence in support of a search warrant are therefore subject to absolute immunity.  A prosecutor's statements in the courtroom and in pleadings that are relevant to the subject matter of the proceeding are likewise absolutely immune."³¹  Thus, if Plaintiffs are asserting claims against Defendant Smith based on his in-court efforts to obtain the injunction, Defendant Smith is entitled to absolute immunity.

The only specific allegation against Defendant Smith is that he was involved in serving the injunction.  "[O]fficial[s] charged with the duty of executing a facially valid court order enjoy [ ] absolute immunity from liability for damages in a suit challenging conduct prescribed

---

²⁹ *Id.*

³⁰ *Glaser v. City & Cnty. of Denver, Colo.*, 557 F. App'x 689, 704 (10th Cir. 2014).

³¹ *Id.*

8

by that order."[32] "[F]or the defendant state official to be entitled to quasi-judicial immunity, the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question."[33] Plaintiffs appear to argue that Defendant Smith was acting outside of the scope of his jurisdiction by serving the injunction. However, Plaintiffs have pointed to nothing that would suggest Defendant Smith did not have the authority to serve a properly issued court order. Therefore, Defendant Smith is entitled to quasi-judicial immunity with respect to Plaintiffs' claims concerning service of the injunction.

Even if Defendant Smith was not entitled to either absolute prosecutorial immunity or quasi-judicial immunity he would be entitled to qualified immunity. Plaintiffs have provided insufficient allegations from which the Court could find that obtaining and serving an injunction would violate a clearly established constitutional or statutory right. Therefore, Plaintiffs' claims against Defendant Smith must be dismissed.

E.   STATE-LAW CLAIMS

Plaintiffs bring various state-law claims, including several claims under the Utah Constitution. Plaintiffs do not oppose Defendants' Motions as they relate to their state common law claims. Therefore, Plaintiffs' claims for defamation, intentional infliction of emotional distress, and negligent hiring, supervision, and retention will be dismissed with prejudice.

---

[32] *Moss*, 559 F.3d at 1163 (second and third alterations in original)

[33] *Id.*

Under *United Mine Workers v. Gibbs*,[34] "a federal court can retain jurisdiction following dismissal of all federal claims if the remaining state claims derive from the same common nucleus of operative facts and a plaintiff would ordinarily be expected to try all of them in one proceeding."[35] However, "[e]ven where a 'common nucleus of operative fact' exists, federal jurisdiction is not mandatory over pendent claims or parties."[36] Federal district courts may decline supplemental jurisdiction in certain situations, including when "the claim raises a novel or complex issue of State law, [or] . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."[37] "[T]he Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion."[38]

Because Plaintiffs do not oppose dismissal of their state-law claims, and the claims based on the Utah Constitution involve complex issues of state law, the Court will decline to exercise supplemental jurisdiction over those claims and they will be dismissed without prejudice.

---

[34] 383 U.S. 715 (1966).

[35] *Bank of Okla., N.A., Grove Branch v. Islands Marina, Ltd.*, 918 F.2d 1476, 1479–80 (10th Cir. 1990) (citing *Gibbs*, 383 U.S. at 725).

[36] *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).

[37] 28 U.S.C. § 1367(c) (2012).

[38] *Estate of Harshman*, 379 F.3d at 1165 (citing *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997); *Gibbs*, 383 U.S. at 726).

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 18 and 20) are GRANTED as set forth above. The hearing set for December 1, 2014, is STRICKEN.

The Clerk of the Court is directed to close this case forthwith.

DATED this 27th day of October, 2014.

BY THE COURT:

Ted Stewart
United States District Judge